**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **DERICK NORRIS** )<br>)<br>    **Plaintiff,** )<br>)<br>v. )<br>)<br>**CITY OF FLOVILLA, GEORGIA,** )<br>)<br>    **Defendant.** )<br>) | <br><br><br><br>**CIVIL ACTION NO. 5:14-CV-441 (MTT)** |

## ORDER

Plaintiff Derick Norris, an African-American male, brings this action against Defendant City of Flovilla, Georgia alleging violations of 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Doc. 6. The City has moved for summary judgment.[1] Doc. 21. The motion is **GRANTED**.

### I. BACKGROUND

Norris was fired by the City's mayor, Scott Chewning; on June 10, 2014, the City Council voted to uphold that decision by a three to two vote.[2] Docs. 21-1 ¶¶ 29-31, 33, 38; 29-2 ¶¶ 29-31, 33, 38. Norris worked for the City from 2000 to 2014 as a Utilities Supervisor. *Id.* ¶ 7. According to Norris, his job included "maintenance, repairing water, cutting grass, weed eating, turning on and off water, [and] checking wells [and] water

---

[1] The City previously moved for summary judgment but did not properly brief relevant issues. *See* Docs. 24; 29; 36; 37. The Court denied without prejudice the City's motion and ordered the City to re-file and properly brief the issues. Doc. 40. In accordance with the Court's order, the parties re-briefed the motion. Docs. 41; 42; 43.

[2] Under the City's policy, Chewning had the authority to fire Norris, but Norris had the right to appeal the disciplinary action to the City Council. Doc. 21-5 ¶ 2. The City Council could have overruled Chewning's decision by a majority vote, and its decision was final. *Id.*

tank tower[s]."  Doc. 24 at 22:14-18.  When he was hired in 2000, Norris's father was the City's mayor.  *Id.* at 19:23-20:8.  In 2011, Norris's father lost the mayoral race to Chewning.  Doc. 21-5 ¶¶ 2-3.

Morgan testified that Norris's performance declined after Chewning became mayor and that he felt Norris no longer "had the City's interest at heart."  Doc. 29-5 at 52:8-14, 53:3-19, 105:24-25.  In September 2012, Norris was involved in an altercation with another employee.  Doc. 21-5 ¶ 4.  As a result, Chewning suspended Norris for two days and terminated the other employee, a Caucasian.  *Id.*  On April 7, 2013, a city laborer filed a complaint against Norris alleging he had verbally threatened him.  *Id.* ¶¶ 5-6.  A member of the Butts County Sheriff's Department investigated the incident and "was unable to substantiate [the laborer's] allegation that Norris had verbally threatened him, but confirmed Norris's antagonistic and hostile conduct towards certain co-workers."  *Id.* ¶ 6.  In response, Chewning issued an oral warning to Norris.  *Id.*  After the laborer filed another complaint, Norris was told if he continued to behave in this way then it "could result in further disciplinary action up to and including termination."  *Id.*

Norris's duties included assisting Billy Kirn, an independent contractor working for the City, with the City's water treatment system.  Docs. 21-5 ¶ 10; 24 at 23:19-24:21, 27:4-10.  Kirn allowed Norris to work on the water system under his license.[3]  Doc. 24 at 23:19-24:21, 27:4-10.  In a letter dated March 21, 2014, Kirn informed Chewning he was having issues with Norris and listed several incidents with Norris "since before the first of the year."  Doc. 21-6 at 37; 42.  Kirn explained that he had witnessed an "attitude change" and felt Norris "no longer has the City's or the citizens of [the City's] best

---

[3] To work on the City's water system required a "Class 3 or higher" license as a "Distribution Operator."  Doc. 21-6 at 46, 65, 85.  Kirn had this required license, but Norris did not and therefore had to work under Kirn's license or supervision.  *Id.*

interest [sic] at heart since he is not being very cooperative with me." *Id.* Among other issues, Kirn said Norris was not responsive when Kirn asked him to do tasks and refused to fill out paperwork. *Id.* at 37-40. A week later, in a letter dated March 28, 2014, Kirn informed Chewning he would no longer allow Norris to work under his license. *Id.* at 44-45. Kirn stated he made this decision because of the incidents with Norris including his unwillingness to cooperate and untruthful comments Norris had made to the Georgia Environmental Protection Division (EPD).[4] *Id.*

Norris also had issues with Annie Mitchell, the City Clerk.[5] Mitchell accused Norris of harassing her. Doc. 21-6 at 49-51. Specifically, Mitchell complained of an incident concerning an open records request by Norris. *Id.* Mitchell stated, after she gave the records to Norris, Norris came back to her desk "shaking the papers," told her that they were not what he asked for, and said he wanted his money back. *Id.* Mitchell also stated Norris later threatened to have her investigated by the police. *Id.* at 50. Morgan witnessed the incident between Mitchell and Norris. Doc. 29-5 at 57:22-60:12, 115:23-116:23. Morgan testified Norris was "waiving [sic] [the paperwork] around" and "was getting a little—not abusive, just loud" prompting him to ask Norris to go outside. *Id.* at 58:4-16. Morgan also stated he thought Norris's interaction with Mitchell violated City policy because Norris was "[b]eing disorderly by raising his voice and not acting professional." *Id.* at 116:5-15.

---

[4] Shortly after his performance evaluation with Chewning and Morgan on March 21, 2014, during which Chewning and Morgan confronted Norris about "suspicious activities going on with the water," Norris complained to the EPD about how the City's water was being treated. Docs. 24 at 107:18-108:23; 24-1 at 124:9-24.

[5] Mitchell stated her allegations in a letter to city officials, including Chewning and the City Council. Doc. 21-6 at 50-51. Norris objects to Mitchell's letter on the grounds that it is hearsay. Doc. 29-2 at ¶ 20. The Court does not consider the letters for "the truth of the matter asserted" therein but only for the purpose of establishing information upon which Chewning and the City Council based its decisions. *Cf.* Fed. R. Evid. 801(c)(2).

Following these incidents, the City hired an attorney, Jessica O'Connor, to investigate the complaints made by Norris and other employees. Doc. 21-1 ¶ 23. Norris, however, claims O'Connor was hired to "build a case" against him. Doc. 29-2 ¶ 23. O'Connor provided her report to Chewning and the City Council on May 5, 2014. Docs. 21-1 ¶¶ 24-25; 29-2 ¶¶ 24-25. The report details the incidents between Norris and other employees. Doc. 21-6 at 53-75. It states Norris displayed an inability to "relinquish control to others caus[ing] numerous disturbances" and, despite warnings, "continue[d] to display aggression and outbursts that should not be tolerated in a work environment." *Id.* at 72. The report concludes that "Norris is no longer an asset to the City since he is not licensed to drive a motor vehicle and is not certified or licensed by the State to operate a water system" and could no longer work under Kirn's license. *Id.* at 73. Ultimately, O'Connor recommended the City "[t]erminate Derick Norris." *Id.* at 72-73.

On May 19, 2014, Chewning, finding that Norris had violated several provisions of the City's Standards of Conduct, informed Norris that he had decided to initiate termination proceedings against Norris. Doc. 6-3 at 1-2. Among other things, Chewning relied on Norris's efforts to request City records "while on City time;" his refusal to perform work assigned by Kirn; Kirn's refusal to permit him to work under his license; and the incident with Mitchell regarding his request for records. *Id.* Norris appealed Chewning's decision to the City Council, and a hearing was held on June 10, 2014. Docs. 21-1 ¶¶ 32-33; 29-2 ¶¶ 32-33. At the hearing, O'Connor presented her findings, and Chewning, Kirn, and Mitchell testified. Docs. 21-1 ¶¶ 35-37; 29-2 ¶¶ 35-37. Thomas Douglas, who is African-American, and Lillian Cowell, who is Caucasian,

joined Morgan, who is African-American, in voting in favor of terminating Norris. Docs. 21-1 ¶¶ 39-40; 29-2 ¶¶ 39-40.

## II.     SUMMARY JUDGMENT STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.

Fed. R. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III.  NORRIS'S CLAIMS

Norris brings claims for discrimination under § 1983 (Count III) and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (Count IV). Doc. 6 ¶¶ 35-41. As § 1983 does not create substantive rights in and of itself but merely provides a method through which to sue a municipality for violations of a constitutional right, the Court will treat Norris's §1983 and Equal Protection claims as one.[6] Additionally, Norris brings a claim for retaliation under Title VII and § 1983 (Count II).[7] *Id.* ¶¶ 29-34.

### A.  Retaliation

In his revised memorandum opposing summary judgment, Norris argues his § 1983 retaliation claim is based on the Fourteenth Amendment Equal Protection Clause, relying on *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d. Cir. 2015).[8] Doc. 42 at 2-3. In *Vega*, the Second Circuit determined that a plaintiff may bring a § 1983 retaliation claim based on the Equal Protection Clause where he was fired for

---

[6] In his response, Norris appears to concede this fact and argues that the Court should evaluate his "42 U.S.C. [§] 1983 discrimination claim using the same standard as Title VII." Doc. 42 at 3.

[7] The parties agreed to dismissal of Norris's claim for discrimination under Title VII because the City employs fewer than fifteen people. Doc. 20.

[8] Previously, in his first memorandum opposing summary judgment, Norris attempted to argue his § 1983 retaliation claim was based on the First Amendment. Doc. 29-1 at 2-4. Norris agreed to dismiss the First Amendment claim, as he failed to provide notice to the Defendant that the First Amendment was at issue. Doc. 41-1. To this point, Norris has not argued his retaliation claim was based on the Equal Protection Clause. However, the City does not argue it was not put on fair notice that Norris's retaliation claim was rooted in the Equal Protection Clause as it did with the First Amendment Claim.

reporting incidents of discrimination. 801 F.3d at 80-82. However, the Eleventh Circuit has not recognized a retaliation claim based on the Equal Protection Clause. *See Owens v. Jackson Cty. Bd. Of Educ.*, 561 F. App'x 846, 848 (11th Cir. 2014) ("This Court has held that a claim of gender-based retaliation 'simply does not implicate the Equal Protection Clause.'" (quoting *Watkins v. Bowden*, 105 F.3d 1344, 1355 (11th Cir. 1997))); *Ratliff v. DeKalb Cty.*, 62 F.3d 338, 341 (11th Cir. 1995) ("[The] cases [cited by the petitioner] hold[] that a constitutional claim for retaliation may be brought under 42 U.S.C. § 1983 pursuant to the *first amendment*, not the equal protection clause."). Further, under *Vega*, Norris's retaliation claim fails. Unlike *Vega*, Norris does not allege he was fired because he made complaints of discrimination. Instead, Norris has maintained that he was fired in retaliation for his complaints to the EPD about the treatment of the City's water. Doc. 6 ¶¶ 29-34. This is not the type of discriminatory retaliation contemplated in *Vega*. *See* 801 F.3d at 80 ([W]e now clarify that retaliation claims alleging an adverse action *because of a complaint of discrimination* are actionable under § 1983." (emphasis added)) Accordingly, the City is entitled to summary judgment on Norris's retaliation claim.

## B. Fourteenth Amendment Equal Protection Clause and § 1983 Claim

### 1. *McDonnell Douglas*

Neither party contests that Norris's discrimination claim under the Equal Protection Clause and § 1983 should be analyzed under the Title VII framework. *See Rioux v. City of Atlanta,* 520 F.3d 1269, 1275 n.5 (11th Cir. 2008) ("Although *McDonnell Douglas* was a Title VII case, Title VII and section 1983 claims have the same elements where the claims are based on the same set of facts."); *see also Abel v. Dubberly*, 210

F.3d 1334, 1338 n. 3 (11th Cir. 2000). To establish municipal liability for employment discrimination, a plaintiff must prove the municipality's final decision-maker made the employment action for discriminatory reasons.[9] *See St. Louis v. Prapotnik,* 485 U.S. 112, 129-30 (1988). Without direct evidence of discrimination, as here, a plaintiff must prove his case with circumstantial evidence pursuant to the *McDonnell Douglas Corp. v. Green* burden-shifting framework. 411 U.S. 792 (1973). First, a plaintiff must establish a prima facie case of discrimination, the test for which differs slightly depending on the nature of the claim. *Id.* at 802. If a plaintiff does so, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).

The plaintiff then has the opportunity to show that the employer's stated reason is in fact pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804. The critical issue "is whether the plaintiff has 'create[d] a triable issue concerning the employer's discriminatory intent.'" *Flowers v. Troup Cty. Sch. Dist.*, 803 F.3d at 1336 (alteration in original) (quoting *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *cf. St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517 (1993)

---

[9] Here, the City Council was the final decision-maker for *Monell* purposes, and therefore the relevant inquiry is whether the City Council voted to fire Norris for discriminatory reasons. *See St. Louis v. Prapotnik*, 485 U.S. 112, 129-30 (1988) (interpreting *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination.").

Here, the City argues it is entitled to summary judgment because (1) Norris has failed to establish a prima facie case of race discrimination; (2) Norris cannot prove the City Council's proffered legitimate, nondiscriminatory reasons are pretext for discrimination; and (3) Norris cannot prove municipal liability.[10]  Doc. 41 at 11-17.

### 2. Prima Facie Case

To establish a prima facie case of race discrimination, Norris must establish: "(1) he [is] a member of a protected class; (2) he held a position for which he was qualified; (3) he was fired from that position; and (4) he was 'replaced by a person outside the protected class *or* suffered from disparate treatment because of membership in the protected class.'" *Robinson v. Colquitt EMC*, 651 F. App'x 891, 894 (11th Cir. 2016) (quoting *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002)).  In its motion and revised memorandum of law, the City argues only that Norris has not established a prima facie case because he has failed to identify a similarly situated employee who was treated more favorably by the City.  Doc. 41 at 11.  But Norris does not need to do so if he can show that he was replaced by someone outside his protected class, and he argues that Lonis McDaniel, a Caucasian, replaced him.  Doc. 42 at 4-5.  The City replies that McDaniel did not replace Norris but only does "some" of Norris's duties and that a part-time, African-American employee also does Norris's duties.  Doc. 43 at 3.  Given that McDaniel at least partially replaced Norris, the Court assumes that Norris established a prima facie case.

---

[10] The City's argument that Norris cannot prove municipal liability is duplicative of its argument that Norris cannot prove that the City Council's vote to fire him is actionable.

### 3. Legitimate, Nondiscriminatory Reasons For Employment Action

In response to Norris's prima facie case of race discrimination, the City bears the burden to provide a legitimate nondiscriminatory reason why Norris was terminated. The reason must be "one that might motivate a reasonable employer." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). The City "need not persuade the court that it was *actually* motivated by the proffered reasons" but must produce evidence sufficient to "raise[] a genuine issue of fact as to whether it discriminated against [Norris]." *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis added) (internal quotation marks and citation omitted). Here, the City has met its burden.

The three city councilmembers who voted to terminate Norris stated they did so for several reasons. Morgan states he voted to terminate Norris mainly because his driver's license was suspended but also considered Kirn's refusal to allow Norris to work under his license. Doc. 29-5 at 16:18-20, 108:16-109:9. Similarly, Douglas stated he terminated Norris because: (1) Kirn told him Norris refused to do his job; (2) Norris could no longer work under Kirn's license; (3) Norris's lack of a driver's license; and (4) the incident with Mitchell. Doc. 29-4 at 13:8-15:1, 61:9-19. Finally, Cowell stated she voted to terminate Norris because: (1) Norris's performance appraisals from 2012 to 2014 suggested there was no "attempt to improve or change behavior," (2) Kirn's revocation of Norris's ability to work under his license, and (3) the incident with Mitchell regarding Norris's request for records. Doc. 29-3 at 12:25-14:3. This is sufficient evidence to raise a genuine issue as to whether the City discriminated against Norris and, clearly, these are reasons that might motivate a reasonable employer. *See*

*Kragor*, 702 F.3d at 1308; *Chapman*, 229 F.3d at 1030. The City has met its burden to articulate legitimate, nondiscriminatory reasons for its actions.

    **4.    Pretext**

Because the City has met its burden of production, Norris must rebut these stated reasons as pretext and "persuad[e] the court that [he] has been the victim of intentional discrimination." *Flowers*, 803 F.3d at 1336 (11th Cir. 2015) (quotation marks omitted) (quoting *Burdine*, 450 U.S. at 256); *see also Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010). Norris can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Kragor*, 702 F.3d at 1308 (quoting *Burdine*, 450 U.S. at 256); *Crawford v. City of Fairburn,* 482 F.3d 1305, 1308 (11th Cir. 2007) ("[T]he plaintiff must rebut *each* of the reasons to survive a motion for summary judgment.") (emphasis added)). Put another way, Norris "may . . . survive summary judgment by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, non-discriminatory reasons." *Freeman v. Perdue Farms Inc.*, 496 F. App'x 920, 925 (11th Cir. 2012) (quotation marks omitted) (quoting *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 965 (11th Cir. 1997)). The "inquiry [into the stated reasons for termination] is limited to whether the [City] gave an honest explanation of its behavior." *Robinson*, 651 F. App'x at 894 (citation omitted).

Norris has not met his burden to rebut all of the City's legitimate, nondiscriminatory reasons for his termination. Most clearly, Norris has not presented sufficient evidence to "demonstrate a genuine issue of material fact as to the truth or

falsity" of Councilmembers Douglas and Cowell's reliance on his altercation with Mitchell in upholding the termination.[11]  *Freeman*, 496 F. App'x at 925.  Norris argues it can be inferred that Douglas believed the accusations in Mitchell's letters because Mitchell was Caucasian and Norris was African-American.  Doc. 42 at 13.  However, Norris provides no evidence to support this inference other than the pre-existing friendship between Norris and Douglas and the conclusion that no one in the "exercise of impartial judgment would believe Mitchell's allegation against a friend before a hearing."  *Id*. at 13.  Moreover, Douglas, like Norris, is African-American.  Doc. 24 at 71:9-15.  It is "extremely difficult for a plaintiff to establish discrimination where the allegedly discriminatory decision-makers are within the same protected class as the plaintiff."  *See Welch v. Delta Air Lines*, 978 F. Supp. 1133, 1153 (N.D. Ga. 1997) (citing *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991)).  Nothing in the record suggests Douglas discriminated on the basis of race.

Norris argues Cowell's reliance on Mitchell's allegation should not be given credence because (1) Cowell testified she did not believe Norris should be disciplined

---

[11] The Court notes Norris may be able to "demonstrate a genuine issue of material fact as to the truth or falsity" of some of the City's legitimate nondiscriminatory reasons, particularly the Councilmembers' reliance on Norris's lack of a driver's license and Norris's inability to work under Kirn's license.  *See Freeman*, 496 F. App'x at 925.  However, under *McDonnell Douglas*, Norris must rebut *each* of the City's stated reasons.  *Crawford*, 482 F.3d at 1308.  Moreover, as Norris brings his claim under § 1983, to prove liability, he must prove the City Council itself acted with an unconstitutional motive.  *Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir. 2002); *Mason v. Vill. of El Portal*, 240 F.3d 1337, 1340 (11th Cir. 2001).  This means Norris must prove a majority of the City Council had a discriminatory motive in voting to fire him.  *Id*.  Norris argues that he "should only have to prove one of the three [council members] were motivated by race to survive summary judgment."  Doc. 42 at 6.  However, the law states otherwise.  It is not enough to prove only one member acted with discriminatory intent.  *Matthews*, 294 F.3d at 1297 ("An unconstitutional motive on the part of one member of a three-member majority is insufficient to impute an unconstitutional motive to the Commission as a whole."); *Mason*, 240 F.3d at 1339 (concluding a plaintiff has not stated a claim for relief where there remained a triable issue as to whether only one of three councilmembers stated reasons were pretextual).  Without rebutting Cowell and Douglas's reliance on the incident with Mitchell, Norris cannot rebut the legitimate, nondiscriminatory reasons stated by a majority of the City Council.  Therefore, unless he can directly prove that a majority of the council was more likely than not motivated by discriminatory intent, Norris cannot prove the City Council acted as a body with an unconstitutional motive to fire him.

after reading the complaint; (2) Cowell believed Mitchell's testimony over Norris's in the hearing without justification; and (3) Cowell did not provide a specific reason why she believed Mitchell's allegation. Doc. 42 at 15-17. These arguments lack merit. First, Cowell stated that she did not make her decision regarding discipline until all the evidence was presented—not that she did not believe discipline was warranted after reading the letters. Doc. 29-3 at 35-40, 52-53, 56. Second, Cowell did not state that she did not believe Norris's testimony but stated "if you're under oath and you're testifying, it should be the truth." *Id.* at 68:17-22. Finally, Cowell stated why she believed Mitchell's allegation: she relied on the information contained in the investigative report from O'Connor. *Id.* at 12:25-14:5. Thus, regarding Douglas and Cowell's stated reasons for voting to terminate him, Norris has not "demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotation marks and citation omitted).

Moreover, Norris has failed to prove "a discriminatory reason more likely motivated" any of the three councilmembers, Morgan, Douglas, or Cowell. *See Kragor*, 702 F.3d at 1308. All three stated under oath they did not fire Norris because of his race. Docs. 29-3 at 11:3-6; 29-4 at 11:21-12:1; Doc. 29-5 at 15:5-7. Norris has provided no evidence to rebut these statements and even acknowledged he never knew Morgan, Douglas, or Cowell to be racist prior to his termination. Doc. 24-1 at 147:20-24. Norris states only that he "believes all three [council]members voted to fire him because of race." However, the "inquiry into pretext centers on the employer's beliefs,

-13-

not the employee's beliefs." *Alvarez*, 610 F.3d at 1266.  Norris's belief alone is insufficient to establish pretext or discriminatory intent.

Accordingly, Norris has failed to "present[] evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of" each of the City's legitimate, nondiscriminatory reasons for his termination.  *Freeman*, 496 F. App'x at 925; *Crawford*, 482 F.3d at 1308.[12]  Moreover, "no rational jury could conclude that the [City's action] was discriminatory."[13]  *Motley v. Fulton Cty.*, 815 F.3d 733, 734 (11th Cir. 2016).

## IV.   CONCLUSION

Based on the foregoing, the City's motion (Doc. 21) is **GRANTED**.  The City is awarded **SUMMARY JUDGMENT** as to all of Norris's claims.

**SO ORDERED**, this the 7th day of March, 2017.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[12] In his first brief opposing summary judgment, Norris argues there is a triable issue of fact regarding the City's discriminatory intent.  Doc. 29-1 at 17-18.  The Court recognizes that establishing the *McDonnell Douglas* elements is not "the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case."  *Smith*, 644 F.3d at 1328.  A plaintiff can always avoid summary judgment by creating a triable issue concerning the employer's discriminatory intent.  A plaintiff can do this by presenting "'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker.'"  *Id.* (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)).  However, for reasons discussed throughout this order, Norris has not presented "a convincing mosaic of circumstantial evidence" that the City acted with discriminatory intent.

[13] In his response brief, Norris argues, for the first time, that the city is liable under the "cat's paw theory because the [C]ity rubber stamped Mayor Chewing's [sic] decision to terminate Norris."  Doc. 42 at 18-20.  However, the "cat's paw theory" is inapplicable because there is no *respondeat superior* or vicarious liability in § 1983 claims.  *Files v. Dekalb Cty. School Dist.*, 2012 WL 716055, at *4 (N.D. Ga.) (citing *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1307 (11th. Cir. 2001); *see also Monell v. Dept. of Social Serv. Of the City of New York*, 436 U.S. 658, 663 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").  Moreover, liability under the "cat's paw" theory requires proof of racial animus on the part of the employee who allegedly influenced the decision maker.  *See, e.g.*, *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331-32 (11th Cir. 1999).  Here, Norris has not adduced any evidence to establish racial animus on the part of Chewning.  Accordingly, Norris cannot prove municipal liability under the "cat's paw" theory.